FILED
2022 Mar-10 PM 12:05
U.S. DISTRICT COURT
N.D. OF ALABAMA

### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ALABAMA
### WESTERN DIVISION

| | | |
|---|---|---|
| THOMAS WILSON | § § § | |
| PLAINTIFF, | § § § | |
| VS. | § § § | CIVIL ACTION NO.: CV-2022- |
| TRUCK AND WHEEL AUTOMATIVE USA CORPORATION | § § § § § | |
| DEFENDANT. | § | JURY DEMAND REQUESTED |

**COMES NOW** Plaintiff Thomas Wilson (hereinafter "Wilson" or "Plaintiff") by his undersigned attorney, David A. Hughes, and brings this action against Truck and Wheel Automative USA Corporation (hereinafter "TAW" or "Defendant") for damages and other legal and equitable relief for violations of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, *et. seq.*, ("FLSA") and other laws. In support thereof, the Plaintiff states the following:

**JURISDICTION AND VENUE**

1.  This action is brought pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201, *et. seq.* District Court jurisdiction exists pursuant to 29 U.S.C. §§

216(b) and 217 and 28 U.S.C. § 1331. This court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

2. Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b) because the Defendant is subject to personal jurisdiction in the Northern District of Alabama.

3. At all relevant times herein, the Defendant's business activities were/are related and performed through unified operations or common control for a common business purpose and constituted/constitute an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

4. At all relevant times herein, the Defendant employed and continue to employ persons in its place of business in furtherance of the activities of the above enterprise while engaged in interstate commerce, and, also at all relevant times herein, the Defendant engaged and continue to engage in commerce by handling, selling, and/or working on good or materials that have been moved in, or produced for, interstate commerce.

## PARTIES

5. Plaintiff Wilson is an adult, is nineteen (19) years of age or over, and is a resident of Vance, Alabama. Plaintiff performed work for the Defendant in Tuscaloosa County, which is in the Northern District of Alabama. Plaintiff was an employee within the contemplation of 29 U.S.C. § 203(e)(1).

6. TAW, upon information and belief, is a Delaware Corporation that operates a wheel assembly manufacturing facility located in Vance, Alabama, in Tuscaloosa County. Defendant has done so at all times relevant for the filing of this complaint, and the time periods referenced in this complaint.

7. At all times material to this action, the Defendant has been an enterprise engaged in the commerce or in the production of goods for commerce as defined by § 203(s)(1) of the FLSA.

8. TAW is an interstate company whose employees are engaged in interstate commerce and whose employees handle and/or work on goods that have been moved in and/or produced in commerce.

9. At all times relative to this action, TAW has had, and continues to have, an annual gross volume of sales made or business done of not less than $500,000.00 (exclusive of excise taxes at the retail level which are separately stated).

10. At all times relevant to this action, Defendant was an "employer" of the Plaintiff as defined by § 203(d) of the FLSA, and the Plaintiff was an "employee" of Defendant as defined by § 203(e)(1) of the FLSA. The Plaintiff worked for the Defendants within the territory of the United States within three years preceding the filing of this lawsuit.

## STATEMENT OF FACTS

11. Plaintiff adopts by reference each and every material averment set out above as if fully set forth herein.

12. Plaintiff worked for Defendant at TAW from February of 2020 to November of 2021.

13. Plaintiff worked for Defendant during that time in the position of Production Supervisor.

14. Plaintiff's job duties were primarily data entry and robotics maintenance.

15. Plaintiff did not customarily and regularly direct the work of at least two or more other full-time employees or their equivalent.

16. Plaintiff did not have the authority to hire or fire other employees, and Plaintiff's suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees were not given particular weight.

17. Plaintiff's primary job duty was not management.

18. As such, Plaintiff was, at all times while employed, a non-exempt employee of the Defendant per the FLSA.

19. Plaintiff sometimes performed services that were involved in interstate commerce.

20. Plaintiff's work for the Defendants was such that it engaged in commerce or in the production of goods for commerce and invoked individual coverage under the FLSA.

21. Plaintiff initially worked six days a week, and later worked five days per week.

22. Plaintiff's normally scheduled main shift was second shift, from 2pm to 10 pm, in the production department.

23. However, Plaintiff also often worked part or all of the third shift, which is 10 pm to 6 am, in the logistics department.

24. Plaintiff's work hours were not recorded as he did not clock in and clock out. While some of Plaintiff's work was sometimes included on "shift reports," that was not always the case as there were partial shifts and hours that Plaintiff that were not recorded by Defendant anywhere.

25. Plaintiff routinely began his workdays 15 minutes before his first scheduled shift performing preparatory work such as checking the sources of the data that he would have to input into the computer and checking the robotics on the line.

26. Plaintiff was paid at a weekly rate, for forty hours of work, at a rate of $673.08 per week, so $16.83 per hour.

27. Defendant paid Plaintiff for some, but not all, of his overtime hours worked at the time and a half rate of $25.23 per hour.

28. However, for many overtime hours worked, including his pre-shift off the clock work and work that he performed on the third shift, the Plaintiff was not paid at all.

29. Plaintiff complained to Defendant about not getting paid for all of his overtime hours worked, and for a time, Plaintiff received some separate checks that were not his normal paychecks that only paid him straight time pay, but not time and a half pay, for some of those overtime hours.

30. As a result of the Defendant's practices, Plaintiff worked an average of 1.25 off the clock hours every workweek for which he did not receive any overtime pay.

31. Further, as a result of the Defendant's practices, Plaintiff worked an average of 10 hours per week on the third shift on multiple workweeks for which he did not receive any overtime pay.

32. Plaintiff brought these and other problems to the attention of the Defendant and complained about these pay practices, but they were not consistently and permanently corrected.

33. Throughout his employment with Defendant, and at all times relevant herein, Plaintiff worked more than forty (40) hours in a week for Defendant in

multiple weeks, but was not paid at a rate of at least 1.5 times his regular rate for many hours that he worked in excess of forty hours in each week.

34. At all times relevant herein, Defendants failed and willfully failed to pay Plaintiff an overtime rate of 1.5 times his regular rate of pay for the hours that Plaintiff worked in excess of forty hours a week.

35. When Plaintiff began work with Defendant in February 2020, per Defendant's direction, he completed the "2019/2020 T&W Enrollment/Change Form" given him by Defendant's human resources department electing to enroll in Blue Cross/Blue Shield's health insurance coverage and Guardian's dental insurance coverage, and provided it to Defendant.

36. Defendant's human resources department induced Plaintiff to enroll in the coverage promising that the deductions would start to be made and at the same time coverage would be effective.

37. In March of 2021, Defendant began to deduct $55.69 out of every one of the bi-weekly paychecks that they issued Plaintiff, and thus out of Plaintiff's pay, for premiums for his alleged health insurance coverage.

38. Upon information and belief, $55.69 is more than what the Defendant represented to the Plaintiff would be the premium amounts for such coverage, but Plaintiff did not object as long as the coverage had started.

39. In reality, upon information and belief, Defendant actually kept the money that it deducted out of Plaintiff's pay, and did not, in fact, enroll him in any such insurance coverage until September 1, 2001, months after it began taking his money for premiums. This was well after it had told him that he was covered by the plan for the health benefits he was paying for.

40. In or about March of 2021, when Defendant began taking the $55.69 out of each of the Plaintiff's checks, he went to Defendant's human resources department and asked why he had not been issued insurance cards, given his election of insurance coverage at the time of his hire and the fact that Defendant was taking money to pay premiums out of his paychecks. Defendant told Plaintiff that he had been enrolled in the insurance, that he had insurance coverage, and that he had not received his card in the mail because it had accidentally been sent to the wrong address. Plaintiff then made sure that Defendant's human resources had his correct address.

41. In August of 2021, Plaintiff needed to go to the doctor but still had no insurance cards. So, again, he went to Defendant's human resources department and asked where his cards were. Defendant assured Plaintiff again that he had the insurance coverage and that he would be getting his cards shortly.

42. This occurred roughly a year and a half after Plaintiff started work for Defendant and filled out the enrollment paperwork that Defendant provided to him,

and six months after Defendant started taking premium payments out of his paychecks.

43.   In September of 2021, Plaintiff finally received his Blue Cross Blue Shield card.  However, Blue Cross Blue Shield card clearly shows on its face that the effective date of Plaintiff's Blue Cross Blue Shield coverage began on September 1, 2021, again, roughly a year and a half after Plaintiff started work for Defendant and filled out the enrollment paperwork that Defendant provided to him, and six months after Defendant started taking premium payments out of his paychecks.

44.   Plaintiff called Blue Cross Blue Shield and confirmed that he did not have any insurance coverage in place before September 1, 2021, in direct contravention of the representations that had been made to him by the Defendant.

45.   In or about October of 2021, Plaintiff finally received his Guardian insurance card.   Plaintiff called Guardian who told him that his coverage started on October 1, 2021 and confirmed that he did not have any insurance coverage in place prior to that date, also in direct contravention of the representations that had been made to him by the Defendant.

## COUNT ONE – FLSA OVERTIME VIOLATIONS

46.   The Plaintiff adopts by reference each and every material averment above as if fully set forth herein.

47. The Defendant has failed and refused to comply with the FLSA's wage requirements by failing to pay the Plaintiff at one-and-one-half of his regular hourly rate for many of the hours that he worked in excess of forty hours per week during the Plaintiff's employment as described in this Complaint.

48. Defendant has failed to comply with the FLSA by failing to keep and maintain accurate records and information documenting all of the hours worked and wages earned by the Plaintiff.

49. The Defendant's failure to pay the Plaintiff overtime pay is impermissible under the FLSA.

50. The Defendant has failed to properly pay the Plaintiff within the last three (3) years preceding the filing of this complaint.

51. The Defendant's willful violations have caused financial damage to the Plaintiff, consisting of loss of pay.

52. At all material times herein, the Plaintiff has been entitled to the rights, protections, and benefits provided under the FLSA.

53. None of the FLSA exemptions apply to the Plaintiff, who was a non-exempt employee. Accordingly, the Plaintiff must be paid in accordance with the FLSA.

54. The Defendant's failure to accurately pay overtime was, and is, willfully perpetrated. The Defendant has not acted in good faith nor with

reasonable grounds to believe its actions and omissions were not a violation of the FLSA, and, as a result thereof, the Plaintiff is entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid overtime premium pay described above pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b).

55.     The Plaintiff is entitled to an award of prejudgment interest at the applicable legal rate as well as reimbursement of her costs, attorneys' fees, and expenses incurred.

56.     As a result of these willful violations of the FLSA's overtime provisions, overtime compensation has been unlawfully withheld by the Defendant from the Plaintiff for which the Defendants are liable pursuant to 29 U.S.C. § 216(b).

## COUNT TWO - FRAUD

57.     The Plaintiff adopts by reference each and every material averment above as if fully set forth herein.

58.     Defendant's aforesaid representations to Plaintiff regarding material facts about the use of money taken by Defendant out of Plaintiff's paychecks and about Defendant's procurement of insurance coverage for Plaintiff, which was an inducement for Plaintiff to go to work for Defendant and to perform work for Defendant, were false and (a) Defendant knew that they were false at the time that they were made, or (b) Defendant, without knowledge of the true facts, recklessly

and/or negligently misrepresented the true facts, or (c) were made by Defendant by mistake, but with the intention that Plaintiff should rely on these facts.

59.     Among other misrepresentations as stated herein, Defendant, long after having Plaintiff's enrollment paperwork and after taking money allegedly for premium payments out of Plaintiff's paychecks, told Plaintiff that he had been enrolled in the insurance, that he had insurance coverage, and that he had not received his card in the mail because it had accidentally been sent to the wrong address.

60.     Plaintiff believed the representations, and in reasonable reliance on the representations, acted to his detriment as set forth herein, including taking a job with Defendant, continuing work for the Defendant without the compensation that he should have received, losing money wrongfully deducted from his paycheck and, later, not being able to seek necessary medical care that he would have received had he had the insurance to do so.

61.     As a proximate result of the aforesaid fraud, Plaintiff suffered damages, including but not limited to medical problems due to non-treatment, treatment delays, pain, suffering, loss of income, and mental anguish.

WHEREFORE, Plaintiff demands judgment against Defendant in an amount of compensatory and punitive damages as will be determined by the Court and/or a jury at a trial of this cause, plus interest and costs.

## PRAYER FOR RELIEF

The Plaintiff respectfully requests that the Court grant the following relief:

A. That the Court issue proper process to compel the Defendant to answer or otherwise plead to the allegations contained in this Complaint;

B. That this Court award the Plaintiff the amount of his unpaid wages including overtime wages, plus an additional equal amount as liquidated damages;

C. That this Court award the Plaintiff judgment against the Defendant for all applicable compensatory damages, punitive damages, reasonable attorneys' fees, costs, disbursements, and interest;

D. For such other and further relief as this Court deems equitable, proper and just.

## PLAINTIFF REQUESTS A TRIAL BY STRUCK JURY

Dated this 10th day of March, 2022.

    Respectfully,

    *S/David A. Hughes*
    David A. Hughes (ASB 3923-U82D)
    *Attorney for Plaintiff*
    Hardin & Hughes, LLP
    2121 14th Street
    Tuscaloosa, Alabama 35401
    Telephone: (205) 523-0463

Fax: (205) 344-6188
E-mail: dhughes@hardinhughes.com

**ADDRESS OF DEFENDANT FOR SERVICE OF PROCESS**

CT Corporation System, registered agent of
Truck and Wheel Automotive USA Corporation
2 North Jackson Street, Suite 605
Montgomery. AL 36104